**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 15-cv-0022-WJM-MEH

DOROTHY MAES,

    Plaintiff,

v.

LEPRINO FOODS COMPANY, INC., a Colorado corporation,

    Defendant.

---

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

---

Plaintiff Dorothy Maes ("Plaintiff") brings this action against Defendant Leprino Foods Company, Inc. ("Defendant") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and the Colorado Anti-Discrimination Act, C.R.S. § 24-34-401 *et seq.* ("CADA").  (ECF No. 6.)  Before the Court is Defendant's Motion to Dismiss Plaintiff's Retaliation Claim Pursuant to Fed. R. Civ. P. 12(b)(1) ("Motion").  (ECF No. 9.)  For the reasons set forth below, the Motion is granted.

### I. LEGAL STANDARD

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction generally take one of two forms.  A facial attack questions the sufficiency of the complaint as to its subject matter jurisdiction allegations.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  In reviewing a facial attack, courts accept all well-pled allegations as true.  *Id.*  A factual attack, on the other hand, goes beyond the allegations in the complaint and challenges the facts on which subject matter jurisdiction is based.  *Id.* at

1003.  A factual attack does not permit the court to presume the complaint's factual allegations are true, although the court does have "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."  *Id*.  In such circumstances, the court's reference to evidence beyond the pleadings will not convert the motion to one under Rules 56 or 12(b)(6), unless the jurisdictional question is intertwined with the merits of the case.  *Id*.  "The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case."  *Id*.

## II.  BACKGROUND

Plaintiff alleges she was hired by Defendant on August 26, 2013.  (ECF No. 6 at 2.)  During her employment, Plaintiff claims she was subjected to a hostile, discriminatory work environment that lasted until she was constructively discharged on November 30, 2013.  (*Id*. at 2-9.)  After leaving her position with Defendant, Plaintiff completed an intake packet from the Colorado Civil Rights Division ("CCRD"), which she submitted along with an eight-page statement of discrimination ("Statement").  (ECF No. 20-1 at 1.)   Believing that the CCRD and the Equal Employment Opportunity Commission ("EEOC") were the same agency, Plaintiff later called the EEOC to inquire whether it had received her file.  (*Id*. at 2.)  An EEOC representative stated the agency had not received the file, and in response Plaintiff e-mailed the EEOC a copy of her statement of discrimination.  (*Id*.)

A CCRD representative then mailed Plaintiff a charge of discrimination, which

she signed and returned to the CCRD. (*Id.*)  This charge included Plaintiff's belief that she had been retaliated against "for engaging in protected activity in violation of the Colorado Anti-Discrimination Act." (*Id*. at 17.)  When Mr. Pate, an EEOC representative, called Plaintiff to follow up on her claims, Mr. Pate discovered Plaintiff's confusion and informed her that she could choose to work with the EEOC or the CCRD, but not both. (*Id*. at 3.)  Plaintiff subsequently informed her CCRD agent that she had chosen to pursue her claims with the EEOC.  (*Id.*)

When Plaintiff received the formal charge of discrimination ("the Charge") from the EEOC, she noticed that the box labeled "retaliation" was not marked. (*Id*. at 3-4, 21.)  Plaintiff, who was *pro se* at the time, alleges she believed that she had no choice but to sign the Charge anyway, and assumed the correct charges would be fully investigated. (*Id*. at 3-4.)  Defendant filed its Motion on February 11, 2015, arguing that Plaintiff's failure to indicate she was pursuing a retaliation claim in her formal Charge bars her from asserting such a claim in this lawsuit.  (ECF No. 9.)  Plaintiff filed a Response (ECF No. 20), and Defendant filed a Reply (ECF No. 28).

### III.  ANALYSIS

#### A.  Converting the Motion

The Court must first determine whether it must convert Defendant's Motion into a motion for relief under Rule 56 or Rule 12(b)(6).  Defendant's Motion is properly characterized as a factual attack because both parties have attached materials beyond the pleadings that do not bear on the sufficiency of Plaintiff's Complaint.  (*Compare* ECF No. 9, *with* ECF No. 20.)  These extraneous materials are, rather, offered to

support the parties' respective positions as to the facts on which subject matter jurisdiction depends. (*See* ECF Nos. 9 & 20.) Whether the aspects of Defendant's jurisdictional challenge are intertwined with the merits of this matter is a separate question.

The Motion argues that Plaintiff failed to exhaust her administrative remedies with regard to her retaliation claim prior to initiating this lawsuit. (ECF No. 9 at 2.) It is true, generally speaking, that a motion should be converted "if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." *Holt*, 46 F.3d at 1003. Title VII and CADA both require administrative exhaustion before jurisdiction can be conferred on the Court, and both statutes provide Plaintiff the substantive relief she seeks. But "the focus of the inquiry is not merely on whether the merits and the jurisdictional issue arise under the same statute. Rather, the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." *Sizova v. Nat'l. Inst. of Standards & Tech.*, 282 F.3d 1320, 1324 (10th Cir. 2002) (quoting *Pringle v. United States*, 208 F.3d 1220, 1223 (10th Cir. 2000)). Determining whether or not Plaintiff exhausted her administrative remedies will not require the Court to resolve the aspects of her substantive claims. *See id.* ("Here, the jurisdictional issue is whether Ms. Sizova has exhausted her administrative remedies, a matter that is simply not an aspect of her substantive claim of discrimination."). Accordingly, the Court need not convert the Motion and will consider Defendant's procedural challenges to Plaintiff's claims under Rule 12(b)(1).

**B.     Plaintiff's Claims**

Defendant argues that the Court lacks jurisdiction over Plaintiff's third claim, retaliation, because Plaintiff did not exhaust her administrative remedies prior to filing suit. (ECF No. 9 at 4.) Specifically, Defendant argues that because Plaintiff did not check the box for retaliation on the Charge filed with the EEOC, she may not pursue that claim here.

"It is well-established that Title VII requires a plaintiff to exhaust his or her administrative remedies before filing suit." *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005). The exhaustion of administrative remedies is, indeed, a jurisdictional prerequisite to suit, rather than a condition precedent. *Id*. Administrative exhaustion serves the twofold purpose of notifying the charged party of the violations and allowing the EEOC a chance to conciliate the claim. *Ingels v. Thiokol Corp.*, 42 F.3d 616, 625 (10th Cir. 1994).

Step one in the exhaustion process is the filing of a discrimination charge with the EEOC. *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007). EEOC charge forms contain several boxes, each labeled with a different category of discrimination, *e.g.*, "sex," "national origin," "race," "retaliation," etc. (ECF No. 20-1 at 21.) The aggrieved party must check the appropriate boxes based on the discrimination at issue. The failure to mark a particular box on the charge is not dispositive, but it creates a presumption that the charging party did not assert claims represented by the boxes left unchecked. *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1260 (10th Cir. 1998). However, the presumption may be rebutted "if the text of the charge clearly sets forth

the basis of the claim." *Jones*, 502 F.3d at 1186.

Plaintiff argues that her Statement and the formal charge filed with the CCRD clearly include her retaliation claim, and that she was erroneously advised by the EEOC not to check the box marked "retaliation" on the Charge.  (ECF No. 20 at 8-9.)  In *Federal Express Corporation v. Holowecki*, 552 U.S. 389, 394 (2008), the plaintiff provided the EEOC with an intake questionnaire and a signed affidavit detailing the alleged discriminatory employment practices.  The question before the Court was whether those documents constituted a proper EEOC "charge."  *Id*. at 395.  The Court held that "a filing is deemed a charge if the document reasonably can be construed to request agency action and appropriate relief on the employee's behalf."  *Id*. at 404.  While the plaintiff did file a formal charge with the EEOC after filing her complaint in the district court, the Court held that "[p]ostfiling conduct does not nullify an earlier, proper charge."  *Id*. at 406.  Thus, according to Plaintiff, her Charge with the EEOC should not nullify the detailed Statement and proper charge filed with the CCRD.  (ECF No. 20 at 9.)

The Tenth Circuit has, however, distinguished *Holowecki* in a similar set of circumstances to the matter at bar:

> in *Holowecki*, the claimant had filed only an intake questionnaire (along with a supplemental affidavit) before filing her lawsuit; she filed a formal charge only after filing her complaint.  Thus, *Holowecki* did not address the situation in this case, where a claimant files an initial intake questionnaire, then timely files a formal charge that becomes the basis of the agency's investigation, all *before* commencing a lawsuit.

*Green v. JP Morgan Chase Bank Nat'l. Ass'n*, 501 F. App'x 727, 731 (10th Cir. 2012)

(unpublished) (emphasis added). The court added that it would be contrary to the statutory scheme if exhaustion occurred where an employee includes a claim in a pre-charge document, but then omits that claim in a later formal charge that serves as the basis for the EEOC proceedings. *Id*. The formal charge "serves to define the scope of the Commission's investigation and to notify the defendant of the charges against it," and allowing litigants to utilize pre-charge documents to expand the scope of a later lawsuit would undermine the policies underlying administrative exhaustion. *Id*. at 731-32 (citation omitted).

The situation here is somewhat different because Plaintiff alleges she filed a proper charge with the CCRD as opposed to a less formal pre-charge document like that in *Green.* (ECF No. 20-1.) Nonetheless, the principle remains the same that it is the operative charge that defines the scope of the EEOC's investigation and guides the Court's administrative exhaustion analysis. Plaintiff has, moreover, presented no evidence that the CCRD or the EEOC actually investigated the CCRD charge, or that Defendant received any documentation to put it on notice as to Plaintiff's retaliation claim during the administrative process. (*See* ECF No. 20.) Plaintiff also explicitly told the CCRD that the EEOC would be handling her case, and the EEOC Charge formed the basis of the subsequent administrative investigation and this lawsuit. (ECF No. 20 at 3; 20-1 at 1–3 ; 6-1 at 1.) While "a plaintiff should not be penalized for the EEOC's negligence in handling a charge," the EEOC evidently found that Plaintiff had not pursued a retaliation claim, which, consequently, did not inform its investigation.[1]

---

[1] Plaintiff does allege that she felt pressure from the EEOC to sign the Charge even though the retaliation box was not marked. (ECF No. 20-1 at 3-4.) The Court is aware that,

*Jones*, 502 F.3d at 1185. The Court accordingly cannot conclude that Plaintiff exhausted her administrative remedies with regard to her retaliation claim based on her CCRD charge or her written Statement, which were not incorporated into the operative Charge.

The Court must therefore determine whether the face of the Charge clearly sets forth the basis of Plaintiff's retaliation claim. *Id*. at 1186. To establish retaliation under Title VII, Plaintiff must show: "(1) she engaged in protected opposition to discrimination; (2) a reasonable person would have found her employer's subsequent action to be materially adverse; and (3) a causal connection exists between her protected activity and the employer's action."[2] *Semsroth v. City of Wichita*, 555 F.3d 1182, 1184 (10th Cir. 2009). An employer's actions are materially adverse if they are "'harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id*. (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006)). "This standard focuses on the employer's retaliatory action, not the underlying discrimination the employee had opposed." *Id*.

The narrative portion of the Charge states that Plaintiff complained to

---

"[i]n the administrative context[,] . . . it appears *pro se* filings may be the rule, not the exception." *Holowecki*, 552 U.S. at 402. Moreover, the *Holowecki* Court recognized that aggrieved employees without any legal knowledge should be able to initiate administrative proceedings with relative ease. *Id*. at 403. But Plaintiff "has failed to offer any reason for not seeking to amend [her] charge at a later time," and the Court is bound by the formal Charge before it, which the Tenth Circuit has held is the appropriate focus in cases such as this. *See Marcelus v. Corr. Corp. of Am./Corr. Treatment Facility*, 540 F. Supp. 2d 231, 236 (D.D.C. 2008).

[2] The Court notes that a separate statute, 42 U.S.C. § 1981, is devoid of any administrative exhaustion requirements and could also support a retaliation claim, and "the showing required to establish retaliation is identical under § 1981 and Title VII." *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011).

Defendant's Human Resources Department that she was being harassed, worked in a hostile work environment, and was discriminated against due to her gender and national origin.  (ECF No. 9-1 at 1.)  Plaintiff alleges that she met with Human Resources three times, but continued to suffer discrimination until she was "constructively discharged on November 30, 2013."  (*Id*.)  According to the Charge, "nothing was done" by Human Resources despite Plaintiff's complaints.[3]  (*Id*.)

The Charge suggests that Plaintiff engaged in protected opposition to discrimination by complaining to Human Resources multiple times.  It does not, however, establish the second and third elements of a *prima facie* case for retaliation.  Retaliation and discrimination are separate wrongs.  "The substantive provision [of Title VII] seeks to prevent injury to individuals based on who they are, *i.e.*, their status.  The antiretaliation provision seeks to prevent harm to individuals based on what they do, *i.e.*, their conduct."  *White*, 548 U.S. at 63; *see also CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 460 (2008) (Thomas, J., dissenting) ("[A] claim of retaliation is both logically and factually distinct from a claim of discrimination—logically because retaliation based on conduct and discrimination based on status are mutually exclusive categories, and factually because a claim of retaliation does not depend on proof that any status-based discrimination actually occurred.").  The Charge allegations do not clearly describe any retaliatory acts committed by Defendant following Plaintiff's complaints to Human

---

[3] The Notice of Charge of Discrimination sent to Defendant by the EEOC includes a copy of the Charge but otherwise contains no additional information regarding Plaintiff's claims.  (ECF No. 9-2.)  Similarly, the Dismissal and Notice of Rights merely states that the EEOC completed its investigation and was unable to conclude that the information it obtained established a violation of Title VII.  (ECF No. 6-1.)

Resources. Rather, the Charge documents a pattern of discrimination directed at Plaintiff that lasted until she was constructively discharged, which supports Plaintiff's other claims.

The Court therefore concludes that the scope of the EEOC's administrative investigation here could not have included a claim for retaliation. *See Tadlock v. Marshall Cnty. HMA, LLC*, 603 F. App'x 693, 700 (10th Cir. 2015). Plaintiff's Title VII and CADA retaliation claims encompassed by her Third Claim for Relief will accordingly be dismissed without prejudice, as Plaintiff has presented no argument that these claims were otherwise exhausted. *See Pueblo of Jemez v. United States*, 2015 WL 3916572, at *5 (10th Cir. June 26, 2015) ("It is to be presumed that a cause lies outside th[e] [federal courts'] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.") (quotation marks and citations omitted).

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion to Dismiss (ECF No. 9) is GRANTED; and
2. Plaintiff's Third Claim for Relief is DISMISSED WITHOUT PREJUDICE.

Dated this 6th day of August, 2015.

BY THE COURT:

William J. Martinez
United States District Judge